# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MOORE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) CV: 10-IPJ-3570-NE |
| O'REILLY AUTOMOTIVE, INC. | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### Procedural Background

Pending before the court is defendant O'Reilly Automotive, Inc.'s ("O'Reilly") motion for summary judgment (doc. 18), brief and exhibits in support (docs. 19-20); plaintiff Christopher Moore's ("Moore") response in opposition and exhibits in support (doc. 21); and defendant's reply (doc. 22).

### Factual Background

Plaintiff, Christopher Moore, is an African-American citizen of the United States and the State of Alabama, and resides in Madison County.

1

Compl., ¶ 5 (doc. 1).  In October 2004 he became employed by defendant, O'Reilly Automotive, Inc.  *Id.*, ¶ 7.  Plaintiff continued working for defendant, at various locations throughout Huntsville, Alabama until October 30, 2008, when he was terminated.

Plaintiff began working for defendant as a full-time Parts Specialist at store #1314 in October 2004, making $7.00/hour.  *Id.*, ¶ 8.  In November 2004 plaintiff was promoted to Assistant Manager at the same location, and his pay was increased to $7.28.  Moore Dep., at 50, 81 (doc. 20-1).  He subsequently received two salary increases within sixty days of his promotion, first to $7.57/hour on December, 12, 2004, and then to $7.87/hour on January 9, 2005.  *Id.*, at 82 (doc. 20-1).  In February 2005 plaintiff requested that he receive a demotion to a part-time Retail Service Specialist (RSS) position due to personal issues – he had been recently divorced and needed more time to care for his son.  Without decreasing his pay rate, defendant granted plaintiff's request for a demotion.  *Id.*, at 51, 58-60 (doc. 20-1).  In April 2005 plaintiff transferred to store #948 and maintained the same RSS position, while also being accommodated by Store Manager Nathan Berninger ("Berninger") with a set schedule of Monday through Friday, 7:00 a.m. to 2:00 p.m.  *Id.*, at 53-54 (doc. 20-1).  This was also known by District Manager Chris Harrelson ("Harrelson").  Harrelson Decl., at 1 (doc. 20-2).  Plaintiff later

transferred to store #1207 after being guaranteed that his limited schedule would remain the same. Moore Dep., at 90-91 (doc. 20-1). Plaintiff contends that sometime in early 2008, Pam Wells ("Wells"), the Store Manager, scheduled him to work nights.[1] Plaintiff further claims that Wells told him that Ernie Golden ("Golden"), who had assumed the District Manager position by this time, told her to schedule him for those hours. Plaintiff claims he then spoke with Golden, who informed him those were the hours that he was needed to work. Golden Decl., at 1 (doc. 20-3). By October 2007 plaintiff had reached a pay rate of $9.00/hour. Moore Dep., at 86 (doc. 20-1).

In 2007 Wells transferred to a different location in Hazel Green, and the position of manager came available at the Sparkman Drive store. Simon Vernon ("Vernon"), who was Caucasian, filled in until the position could be permanently filled. Charles Holman ("Holman"), who is also Caucasian, was hired to be the manager approximately around the end of August 2008 or early September 2008. Compl., ¶ 12 (doc. 1). Plaintiff alleges that he complained of race discrimination to Golden and then to Amy Dresen (n/k/a Amy Spurlock), Team Member Relations Coordinator. Plaintiff contends that defendant retaliated against him for

---

[1] Plaintiff claims this scheduling incident occurred in August 2008. However, Wells transferred out of the Store Manager position at Store #1207 effective April 2008. Brief in Support of Summary Judgment, at 4, n. 8 (doc. 20).

these race discrimination complaints.[2]  *See* Compl., ¶ 15-16, 19-20 (doc. 1); Plaintiff's Responses to Interrogatory # 9 (doc. 20-5).  On October 16, 2008, Moore received a First and Final Warning at Dresen's direction for an incident that had occurred on October 5, 2008, where Plaintiff states he "allegedly was insubordinate to Ernie Golden" and complained Golden was retaliating against him by intentionally changing his hours.  Compl., ¶ 22 (doc. 1); Plaintiff's Responses to Interrogatories # 9 (doc. 20-5).  Defendant informed plaintiff that the write-up was due to his reaction and conduct upon seeing the schedule for that week, and for the inappropriate way in which he talked to his superior.  In addition, plaintiff was informed that further "outburst[s]" would lead to additional disciplinary action and possibly, termination.  Moore Dep., at 204-206 (doc. 20-1).  That same date, he was issued a First Warning for verified attendance violations.  Compl., ¶ 23 (doc. 1); Moore Dep., at 208-213 (doc. 20-1).  On October 30, 2008, plaintiff was terminated.  Compl., ¶ 25 (doc. 1).  That morning, Holman called Dresen to report a complaint by an angry customer regarding an incident with plaintiff the prior evening.  Dresen told Holman to gather statements from plaintiff

---

[2] Plaintiff claims that between September 19, 2008, and September 27, 2008, he complained of race discrimination and nothing was done by Golden.  However, plaintiff's EEOC charge makes no mention of a September 2008 complaint to Golden, but rather, only mentions that he experienced retaliation after calling corporate in October 2008.

and Kelvin Jones, the other employee at work the prior evening. Spurlock Decl., at 1 (doc. 20-6). Plaintiff told Holman that he "wasn't going to write a statement on that. It was a waste of time." Plaintiff told Holman "y'all [are] discriminating against [me];" "I'm tired of this shit;" and "go ahead and fire me." Plaintiff also said, "I am tired of you guys playing with my schedule, coming up with all of these little petty excuses to try to fire somebody, and why don't you just go ahead and fire me." Moore Dep., at 223-225 (doc. 20-1). Holman informed Dresen of plaintiff's comments, and plaintiff states that Dresen directed Holman to send him home. *Id.*, at 217 (doc. 20-1). Dresen, with approval of Team Member Relations Manager Mindy Morgan, determined that based on the stated conduct about which she had been informed giving rise to plaintiff's First and Final Warning barely two weeks prior, coupled with his conduct about which she had been informed on this date, his employment should be separated. Spurlock Decl., at 1 (doc. 20-6).

Plaintiff makes claims of multiple discriminatory remarks that have created a hostile work environment. Compl., ¶ 18 (doc. 1). Plaintiff claims that while working at store #948 (between April 2005 and September 2007), he came into the store after retrieving $50 in dollar bills from his car, at which time James Head, a Caucasian coworker, stated that "the drug game must be good on your side of town." Plaintiff asked Head what he meant, to which Head allegedly responded,

"a man like you don't walk around with that kind of money in your pocket." Moore Dep., at 155-56 (doc. 20-1). Plaintiff also alleges that Head told plaintiff he should be working at store #1207 because all the blacks are on that side of town and he could deal with them better. *Id.*, at 147-49 (doc. 20-1). In addition to those two remarks, plaintiff mentions two more comments that he did not hear, but allegedly learned about from coworkers. Plaintiff claims that in October of 2008, former co-worker Devon Masseth stated "that he was told by a person high in management that [Masseth, a Caucasian] couldn't manage store #1207 because that side of town was too dark for him." Compl., at 18 (doc. 1); Moore Dep., at 150-154 (doc. 20-1). Plaintiff also claims that Makeeda Clay, a former co-worker, told him at an unidentified time of plaintiff's employment that Jimmy, who plaintiff claims was a manager at store #948, had called store #1207 the "hoodlum store." Moore Dep., at 157-58 (doc. 20-1).

Plaintiff filed a Charge of Discrimination with the EEOC in February of 2009. Charge of Discrimination (doc. 1-1).

### Summary Judgment Standard

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* FED.

6

R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). The non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or merely be colorable. *See* FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## Legal Analysis

In his Complaint, plaintiff asserts race discrimination and retaliation claims against defendant under Title VII and 42 U.S.C. § 1981, as well as negligence and wantonness claims under Alabama law. As stated below, under the *McDonnell Douglas* burden-shifting framework, there is no genuine issue of material fact, and

thus, all of plaintiff's claims are due to be dismissed and summary judgment is due to be granted for defendant. *See,* 411 U.S. 792, 802 (1973).

I.  *Disparate Pay Claim*.

First, plaintiff's claims of disparate pay are time-barred. Plaintiff's EEOC Charge and his Complaint allege that plaintiff did not receive appropriate compensation for his time working as an Assistant Manager, which ended in early 2005. However, plaintiff failed to file his Charge of Discrimination regarding this disparate pay issue until February 2009, more than 180 days from when he last worked as an Assistant Manager without commensurate compensation; thus, plaintiff's Title VII claims are time-barred. *See Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998); *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992). Further, there is nothing in the EEOC Charge that suggests a claim for disparate pay based on plaintiff's work as a Retail Services Specialist "could reasonably be expected to grow out of the initial charges" of disparate pay. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000); *see also*, EEOC Charge of Discrimination, at 1 (doc. 1-1) ("I performed the duties of assistant manager for the first two years, without commensurate compensation. I complained to management that I was not being compensated for working as the

assistant manager, but was told they would have to give me the compensation in increments. I never received any incremental compensation as promised. For the last three years, I have worked as a Retail Services Specialist"). Plaintiff's § 1981 claims are also barred by the four-year statute of limitations under 28 U.S.C. § 1658 for all claims "arising under an Act of Congress enacted after [December 1, 1990]," since the Complaint in this case was not filed until December 22, 2010. *See Jones v. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

Second, even if plaintiff's claims are not time-barred, he fails to show a prima facie case of pay discrimination. In order to establish a prima facie case, plaintiff must show: (1) he belongs to a racial minority; (2) he received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage. *See Cooper v. Southern Co.*, 390 F.3d 695, 735 (11th Cir. 2004). Plaintiff belongs to a racial minority, but he fails to bring forth evidence showing that he received lower wages than he was qualified to receive. Plaintiff additionally fails to bring forth evidence of similarly situated comparators who were receiving higher compensation than plaintiff. As an initial matter, plaintiff only first mentions Nickalous Braun, James Bowman, James Carr, and Jason Lackey in his summary judgment brief. By failing to identify these comparators in the pleadings,

discovery responses, depositions, or at any earlier stage of this litigation, plaintiff is barred from using these persons as comparators. *See* FED.R.CIV.P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"). Damien Reynolds ("Reynolds") was mentioned in plaintiff's deposition and is therefore not barred by Rule 37(c). However, plaintiff failed to show that Reynolds was similarly situated. Plaintiff only states that Reynolds was a part-time Parts Specialist that worked in the same region at the same company. Further, plaintiff offers no evidence that he was qualified to earn higher wages than Reynolds, other than the fact that plaintiff had been working for defendant for four years as an RSS when Reynolds was hired. Even ignoring the fact that plaintiff's choice of comparators is insufficient to support his case, plaintiff exhibits selective bias – plaintiff ignores various Caucasians employed during the relevant time frame with a wide range of pay rates, often less than plaintiff's pay, as well as several African-American employees who were hired at a higher rate than most Caucasian employees . *See* Employment Files, Ex. B, C (doc. 22-2 through 22-4).

    Assuming *arguendo* that plaintiff satisfied his prima facie case, defendant

has a legitimate, non-discriminatory reason for the pay discrepancies.  Pay is based upon performance, economic conditions, the particular store or department, and company profitability.  O'Reilly Handbook, at 1 (doc. 21-4).  Plaintiff offers no evidence to refute this or to show that defendant's reason was pretext for discrimination.  Thus, there is no genuine issue of material fact and summary judgment shall be granted for defendant on the disparate pay claim.

II.     *Failure to Promote Claim.*

Plaintiff claims he was racially discriminated against when he was denied a promotion to Store Manager at store #1207 in August of 2008.  To establish a prima facie case of racially discriminatory failure to promote, a plaintiff must show: (1) he belongs to a racial minority; (2) he was qualified for and applied for a position that the employer was trying to fill; (3) he was denied the position; and (4) a non-member of the protected class was hired.  *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1539, n. 11 (11th Cir. 1997).

Plaintiff can show elements (1), (3), and (4), but he is has failed to establish that he either applied for or was even qualified for the position of Store Manager.  As an initial matter, plaintiff fails to bring forth any evidence that he ever applied for the open Store Manager position.  Notwithstanding the lack of evidence of an

application for the position, plaintiff fails to prove that he was qualified to be a store manager. In order to fulfill the second element and show he was qualified for the position, plaintiff must show he met the "employer's objective qualifications." *Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 769 (11th Cir. 2005). Since early 2005, when plaintiff requested he be demoted from his Assistant Manager position to an RSS in order to have a more flexible schedule, plaintiff has insisted that he work a limited and rigid part-time schedule from 7:00 a.m. to 2:00 p.m. As defendant points out, a Store Manager must be able to work at least eight hours a day, while being available nights and weekends, in order to handle a variety of unplanned circumstances. *See* Golden Decl., at 1-2 (doc. 20-3) ("An O'Reilly Store Manager must be able to work eight hours/day, six days a week, including nights and weekends, and generally be available seven days a week, even when not scheduled to work. For example, a Store Manager must be available – even when not at work – to handle situations involving a store robbery; employee or customer injuries; employee theft; employee altercations; unexpected absences of other managers or team members; customer service issues; security alarm triggering; inclement weather and power outage issues; and O'Reilly delivery truck accidents"). *Id.* Plaintiff's self-imposed limited schedule prevented him from being qualified for the Store Manager position.

Even if plaintiff can establish a prima facie case for failure to promote, defendant can overcome this with a legitimate, non-discriminatory reason for failing to promote plaintiff to Store Manager. For the same reason stated above – plaintiff's unavailability outside of a limited, day-time shift – defendant had a legitimate, non-discriminatory reason for not promoting plaintiff to Store Manager. Plaintiff is unable to establish that this reason was just pretext for racial discrimination. Plaintiff attempts to argue that pretext is shown by the fact that no African Americans have been managers in the four years he worked there; however, plaintiff fails to offer any evidence of the number of African Americans who applied for management positions and the number qualified for management positions. For these reasons, there is no genuine issue of fact and defendant's motion for summary judgment shall be granted on plaintiff's claims of racial discrimination for failure to promote.

III.   *Hostile Work Environment Claim.*

Plaintiff contends that he was subject to a racially hostile work environment while working for defendant, specifically due to four comments made over his four years of employment with defendant. In order to establish a prima facie case of hostile work environment, a plaintiff must show: (1) he belongs to a protected

group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee (such as race); (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under a theory of vicarious or direct liability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *see also*, *Reeves v. C.H. Robinson Worldwide Inc.*, 594 F.3d 798, 808 (11th Cir. 2010).

The first three elements are met by plaintiff; however, plaintiff can not satisfy the fourth element of a hostile work environment claim.  To be actionable as severe or pervasive, the harassment "must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] . . . to be abusive.'" *Miller*, at 1276; *Reeves*, at 809.  In order to determine if the harassment was objectively severe, the court considers: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's job performance." *Miller*, at 1276 (*citing Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)).  Plaintiff can only cite to four comments over the course of his

four years of employment with defendant, and further, he only heard two of those comments directly – that "the drug game must be good on [plaintiff's] side of town" and that he should work at store #1207 because all the blacks are on that side of town and he could deal with them better. Moore Dep., at 156, 147-49. Four comments over a four year period of time is simply insufficient, particularly since two of the comments were not even made to plaintiff. Plaintiff has shown nothing that would lead the Court to believe that the conduct was so severe and pervasive that it would unreasonably interfere with plaintiff's job performance. Thus, there is no genuine issue of material fact as to whether there is a hostile work environment, and defendant's motion for summary judgment shall be granted for defendant on this claim.

IV.  *Retaliation Claim.*[3]

In order to prove a claim of retaliation, plaintiff must show: (1) he engaged in activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there is some causal relationship between the two events. *See*

---

[3] Plaintiff never addressed the claims that he was retaliated against by being scheduled to work hours he could not work, thus, those claims are abandoned. *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274 (11th Cir. 2003). For this reason, the only retaliation claims remaining are those relating to the disciplinary write-ups on October 16, 2008, and the termination on October 30, 2008.

*Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008).  Plaintiff meets this burden.  He was engaged in a protected activity when he was making his complaints to management as well as when he made his EEOC complaint.  *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes internal complaints of [racial] harassment to superiors as well as complaints lodged with the EEOC...").  The second element is clearly met as plaintiff was terminated from his employment with defendant.  Arguably there is a causal relationship between the protected activity and the adverse employment actions as there is a close temporal proximity between plaintiff's complaints to management and his termination.  The disciplinary write-ups on October 16, 2008, and the termination on October 30, 2008, both occurred in a short time after plaintiff's complaint to management about race discrimination.  *See Clark County Sch. District v. Breeden*, 532 U.S. 268, 273 (2001) (The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close"); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *see also, Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 920 (11th Cir. 1993).

Defendant contends that there was a legitimate, non-discriminatory reason for defendant's termination of plaintiff, for which plaintiff can not establish pretext.  Plaintiff does not dispute the underlying conduct that led to the disciplinary write-ups – he does not dispute that he had attendance violations and that he was insubordinate to Golden.  As for his termination, plaintiff does not dispute the fact that he had an outburst when asked to write a statement about the incident with a customer the day prior to his being terminated, which was in fact the reason plaintiff was terminated.  As defendant points out, insubordination and policy violations are legitimate, non-discriminatory reasons for the disciplinary write-ups and termination.  *See Hudson v. Blue Cross Blue Shield of Alabama*, 2011 WL 2471578, at *1 (11th Cir. 2011) ("An employer has the 'right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules'")(*quoting Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11 th Cir. 2002)); *Morton v. Astrue* , 2010 WL 2130613, at *2, n. 3 (11th Cir. 2010) ("Even assuming Morton could establish a prima facie case of discrimination, he has not demonstrated that the SSA's legitimate, non-discriminatory reason for the suspension - his deliberate insubordination - was pretexual").  Plaintiff fails to show that defendant's legitimate, non-discriminatory reason was actually pretext for retaliatory conduct.  Plaintiff also fails to demonstrate any similarly situated

17

comparators that engaged in similar conduct but were treated more leniently. *See Kaul v. Brett Robinson Gulf Corp.*, 2011 WL 1669057, at *9 (S.D. Ala. 2011). In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (*citing Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999). None of the Caucasian comparators mentioned by plaintiff are "nearly identical" to plaintiff. The comparators performed different jobs at different stores with different managers, and more importantly, committed different violations than those committed by plaintiff. In particular, none of the comparators had outbursts against management as plaintiff did against his superiors.

For the reasons outlined above, there is no genuine issue of material fact regarding plaintiff's claims of retaliation, and thus, defendant's motion for summary judgment shall be granted.

V.  *Negligence/Wantonness Claim*.

Plaintiff failed to respond to defendant's motion for summary judgment on the claims for negligent and/or wanton hiring, retention, training, and supervision.

For that reason, those claims have been abandoned, and summary judgment shall be granted for defendant on those claims. *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274 (11th Cir. 2003).

## Conclusion

Having considered all of the foregoing, the court is of the opinion that defendant's motion for summary judgment (doc. 18) is due to be **GRANTED** on all of plaintiff's claims against defendant, which the court shall do by separate order.

**DONE** and **ORDERED** this the 27th day of September 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE